UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| STEPHANIE SUE CARLSON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:11-cv-066-RLY-WGH |
| | ) | |
| CSX TRANSPORTATION, INC., | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT OR, IN ALTERNATIVE, STAY CASE AND PLAINTIFF'S REQUEST FOR ORAL ARGUMENT**

In her First Amended Complaint, Plaintiff, Stephanie Sue Carlson ("Plaintiff"), alleges that CSX Transportation, Inc. ("CSX"), discriminated against her on the basis of her gender and retaliated against her for filing a prior EEOC complaint and lawsuit, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e)(2-3). The allegations that form the basis of Plaintiff's First Amended Complaint occurred in both Indiana and Alabama. At the time Plaintiff filed the First Amended Complaint, a lawsuit containing multiple allegations and causes of action identical to those included in the First Amended Complaint was pending in the Northern District of Alabama. CSX moves to dismiss Plaintiff's First Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). In the alternative, CSX requests that the court stay this action due to Plaintiff's failure to dismiss her Alabama lawsuit. Plaintiff has since dismissed the Alabama lawsuit; therefore,

1

CSX's Alternative Motion to Stay is **DENIED as MOOT**.  For the reasons set forth below, CSX's Motion to Dismiss is **GRANTED** and request for attorneys' fees is **DENIED**, and Plaintiff's Request for Oral Argument is **DENIED**.

## I.     Background

CSX hired Plaintiff, a female, in March of 2002.  (First Amended Complaint ¶¶ 11-12).  At all times relevant to this action, Plaintiff's work performance met and/or exceeded CSX's legitimate expectations.  (*Id.* ¶ 13).  Until March of 2008, Plaintiff served as a Clerk for CSX.  (*Id.* ¶ 16).  In response to a lawsuit filed by Plaintiff in September 2007 alleging violations by CSX of Plaintiff's rights under Title VII, Plaintiff was promoted by CSX in March of 2008 from Clerk to Substitute Yardmaster in Birmingham, Alabama.  (*Id.* ¶¶ 14, 16-17).  In response to the same lawsuit, CSX promoted Plaintiff to a position in CSX's Manager Trainee Program in January of 2009.  (*Id.* ¶ 20).

### A.     Manager Trainee Program

From January 12, 2009, to March 27, 2009, the Manager Trainee Program primarily consisted of classroom instructions and testing, for which to the best of her information Plaintiff believes she received among the highest scores in the class.  (*Id.* ¶ 21).  At a class held during the week of March 23-27, 2009, Plaintiff asked the presenter, CSX Vice President Mundy, a question, after which two of the instructors, Tom Cook ("Cook") and Jaymes King ("King"), requested that Plaintiff remain after class.  (*Id.* ¶ 22).  The instructors gave Plaintiff an extra assignment not given to other trainees, and

subjected Plaintiff to belittlement, unfair criticism, harassment, and false accusations from that point until the end of the program. (*Id.*).

After the trainee program moved from classroom instruction to field instruction, CSX regularly, consistently, and systematically subjected Plaintiff to belittlement, undue criticism, false accusations, and harassment beginning on May 2, 2009, and culminating during a May 28, 2009, telephone conference. (*Id.* ¶¶ 23-24). During that telephone conference, Cook and King falsely accused Plaintiff of being the worst trainee in the class, not completing a project, being behind in another project, not completing her training schedule checklist, and being "too union," and said that Plaintiff should not have taken vacation days, even though the days were approved by her immediate supervisor. (*Id.* ¶ 24). As a result of this treatment, Plaintiff resigned that same day from the Manager Trainee Program. (*Id.* ¶ 25).

### B. Birmingham, Alabama

After her departure from the Manager Trainee Program, CSX instructed Plaintiff to report as a Clerk in Birmingham, Alabama ("Birmingham"), and to discuss her previous position as Substitute Yardmaster with Danny Spencer ("Spencer"), Terminal Superintendent in Birmingham. (*Id.* ¶ 26). In a meeting on June 2, 2009, CSX, through Spencer, rescinded Plaintiff's application for yardmaster and released her from yardmaster training. (*Id.* ¶ 27). Plaintiff was told that CSX headquarters in Jacksonville made the decision. (*Id.*).

### C. Evansville, Indiana

Unable to return as Substitute Yardmaster in Birmingham, Plaintiff exercised her Clerk's seniority and accepted a lower-paying position in Evansville, Indiana ("Evansville"). (*Id.* ¶ 28). On August 26, 2009, CSX posted openings for two Substitute Yardmaster[1] positions in Birmingham. (*Id.* ¶ 29). Via email, Plaintiff requested Spencer's assistance in obtaining one of the positions. (*Id.*). On August 28, 2009, Spencer responded that no current job posting for Yardmaster existed in Birmingham, upon which Plaintiff discovered that the postings had been removed. (*Id.* ¶30). Another opening for Substitute Yardmaster in Birmingham was posted on September 23, 2009, and Plaintiff timely submitted the required application. (*Id.* ¶ 31). Three days later, Plaintiff informed Spencer of her application and again requested his assistance in securing the position. (*Id.* ¶ 32). On October 7, 2009, CSX informed Plaintiff that, "after careful consideration," she was not selected for the position. (*Id.* ¶ 33). As a result, Plaintiff filed a complaint in October of 2009 with the Equal Employment Opportunity Commission ("EEOC") in Alabama, alleging that her forced resignation from CSX's management trainee program and inability to return to her position as Substitute Yardmaster constituted discrimination based on her sex and age, and retaliation for engaging in a protected activity. (*Id.* ¶ 39).

---

[1] Although Plaintiff used the term "trainmaster" in this instance, Plaintiff later refers to the same position as the "yardmaster 'vacancy'"; therefore, Plaintiff appears to be using the terms "trainmaster" and "yardmaster" interchangeably. For the sake of consistency and clarity, the court uses only the term "yardmaster."

On June 1, 2010, CSX posted openings for Substitute Yardmaster positions in Evansville, where Plaintiff works as a Clerk. (*Id.* ¶ 41). Plaintiff applied for the position, for which she was qualified, on June 3, 2010, and passed a prerequisite test. (*Id.* ¶¶ 42-43). CSX advised Plaintiff of its receipt of her application, and that she was not selected for the position. (*Id.* ¶¶ 44-45). Plaintiff then requested an interview, but was denied by CSX. (*Id.* ¶ 46). According to Plaintiff, the candidates that were interviewed and ultimately selected for the positions were not as qualified as Plaintiff. (*Id.* ¶ 47). Accordingly, Plaintiff filed an EEOC complaint in Indiana in September of 2010, alleging discrimination based on her sex and retaliation for engaging in a protected activity. (*Id.* ¶ 53).

In November of 2010, the EEOC in Alabama issued a Dismissal and Notice of Rights letter to Plaintiff. (*Id.* ¶ 40). The EEOC in Indiana issued Plaintiff a right to sue letter to Plaintiff in February of 2011. (*Id.* ¶ 54). In turn, Plaintiff filed a lawsuit in the Northern District of Alabama on March 3, 2011, and this lawsuit in the Southern District of Indiana on May 16, 2011. (*Id.* ¶¶ 40, 54). After CSX moved to dismiss Plaintiff's Complaint in its entirety, Plaintiff moved to dismiss Count 1, which contained a claim for age discrimination. Ultimately, Plaintiff filed a First Amended Complaint, the purpose of which was to consolidate the Indiana and Alabama actions and remove the age discrimination allegations. (Docket # 20, Motion to File Amended Complaint; First Amended Complaint). In response to Plaintiff's Motion to Dismiss Count I of Plaintiff's Complaint, this court dismissed Count I of the Complaint with prejudice, with all aspects

5

of Plaintiff's First Amended Complaint to remain pending. (Docket # 24, Order on Motion to Dismiss Count I of Plaintiff's Complaint). Then, upon agreement of the parties, the court denied CSX's original motion to dismiss, or, in the alternative, to transfer the case as moot in light of Plaintiff's First Amended Complaint. (Docket # 25, Order on Motion to Dismiss; or, in the Alternative, to Transfer Case). The parties also agreed that the denial was without prejudice to CSX's right to raise any and all defenses and claims currently pending before the Alabama court in any future motion to dismiss or answer. (*Id.*).

In Count I of the First Amended Complaint, Plaintiff alleges that CSX's treatment of her during the Manager Trainee Program constitutes constructive discharge from the program. (*Id.* ¶ 56). Furthermore, CSX's belittlement, unfair criticism, false accusations, and harassment of Plaintiff during the management training program, refusal to allow Plaintiff to return to her position as Substitute Yardmaster in Birmingham, and deferential treatment to others in each situation constitutes gender discrimination under Title VII. (*Id.* ¶¶ 56-58). Plaintiff also accuses CSX of gender discrimination in Count II, based on CSX's refusal to interview and promote Plaintiff as Substitute Yardmaster in Evansville and its deferential treatment of others. Finally, Plaintiff alleges in Counts III and IV that CSX retaliated against her for filing complaints with the EEOC against CSX by belittling, unfairly criticizing, falsely accusing, and harassing Plaintiff during the Manager Trainee Program, which culminated in her constructive discharge from the program; refusing to allow Plaintiff to return to her position as Substitute Yardmaster in Birmingham; and

refusing to consider Plaintiff for an opening of Substitute Yardmaster in Birmingham on multiple occasions, all in violation of Title VII.  (*Id.* ¶¶ 65-68, 71).

CSX now moves to dismiss the First Amended Complaint on the grounds that Plaintiff failed to state a claim under Rule 12(b)(6), and requests attorney's fees for the time frame in which Plaintiff filed and maintained multiple proceedings for identical causes of action in Alabama and Indiana.  Plaintiff insists that she has sufficiently pled facts to support the claims in the First Amended Complaint.  Furthermore, Plaintiff notes that CSX did not agree to waive venue or statute of limitations defenses until after Plaintiff was forced to respond to two motions to dismiss, and that this court gave no time limit regarding dismissal of the Alabama lawsuit; therefore, CSX is not entitled to attorney's fees.  Plaintiff requests oral argument on CSX's Motion.

## II.   Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of claims for "failure to state a claim upon which relief may be granted."  FED.R.CIV.P. 12(b)(6). Under Rule 8(a)(2), a complaint must "'give the defendant fair notice of what the . . . claim is and the ground upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint need not make detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, but it must contain more than "an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

7

cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Additionally, to survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," not when the plaintiff only raises a "sheer possibility that the defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The court must treat the factual allegations in the complaint as true, construe the allegations liberally, and draw all reasonable inferences in the plaintiff's favor. *See Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005). Accordingly, the facts outlined above are accepted as Plaintiff alleges them.

## III.   Discussion

First, Plaintiff erroneously claims that the instant Motion to Dismiss should be denied, because it includes the same arguments contained in CSX's prior Motion to Dismiss filed with this court on June 1, 2011, which the court denied. In fact, the court merely denied as moot CSX's original motion, in light of Plaintiff's filing of the First Amended Complaint, because the original motion was based on the original Complaint. (Docket # 25, Order on Motion to Dismiss; or, in the Alternative, to Transfer Case). In other words, the court's denial of CSX's motion had nothing to do with the merits. Furthermore, the ruling was without prejudice to CSX's right to raise any and all defenses and claims currently pending before the Alabama court in any future motion to dismiss. (*Id.*). Accordingly, Plaintiff's argument fails.

Plaintiff goes on to contend (A) that she properly pled her claims of sex discrimination and retaliation for Plaintiff's alleged constructive discharge from the Manager Trainee Program and CSX's alleged failure to restore her as Substitute Yardmaster after Plaintiff resigned from the Manager Trainee Program, and that her constructive discharge from the Manager Trainee Program and failure to promote her to Substitute Yardmaster constitute the adverse employment actions on which her claims rely, and (B) that CSX is not entitled to attorneys' fees for maintaining lawsuits against CSX in two districts.

### A. Title VII Claims

Title VII prohibits an employer (1) from refusing to hire an individual or to discriminate against an individual on the basis of sex, and (2) from taking an adverse employment action against an employee simply because that employee filed an unfair employment charge. 42 U.S.C. §§ 2000e-2(a), 2000e-3(a); *Burlington Northern & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006).

#### 1. Sex Discrimination

Plaintiff's claims rest on her allegation that CSX gave deferential treatment to "others" based on Plaintiff's gender. (First Amended Complaint ¶¶ 56-59, 62). CSX contends that Plaintiff's claims of sex discrimination cannot survive, because she alleges no direct evidence of discrimination, gender-specific mistreatment, or that CSX favored similarly-situated male employees. In addition, her factual allegations do not support claims of constructive discharge and failure to promote, which would constitute the

adverse employment actions necessary to satisfy the elements of her sex discrimination claims.

Fatal to Plaintiff's claims of sex discrimination is her failure to allege that she was treated less favorably than her male counterparts. Nowhere in her First Amended Complaint does Plaintiff allege that a male employee was treated more favorably than she was treated. Furthermore, Plaintiff alleges no direct or circumstantial evidence suggesting discrimination by CSX based on Plantiff's gender. The statements made by her instructors in the Manager Trainee Program that Plaintiff was the worst trainee in the class, did not complete a project, was behind in another project, did not complete her training schedule checklist, and was "too union" are gender-neutral. Also, in her Response Brief, Plaintiff admits that she does not know how the posted positions of Substitute Yardmaster were filled by CSX. (Response Brief 10). In other words, the positions may have been filled by women, in which case, Plaintiff failed to raise even the sheer possibility that CSX acted unlawfully by discriminating against her due to her gender. Plaintiff has not alleged facts to support a claim of gender discrimination; therefore, Plaintiff has failed to state a claim for sex discrimination under Rule 12(b)(6).

   2.  **Retaliation**

     a.  **Alabama Retaliation Claims**

Plaintiff also contends that in May of 2009 CSX constructively discharged her from the Manager Trainee Program and did not allow her to return to her previous position as Substitute Yardmaster in Birmingham. She claims that CSX took these

actions in retaliation for a lawsuit she filed against CSX in September of 2007 alleging age discrimination, which was still pending at the time of these events. CSX insists that Plaintiff's claims of retaliation must fail, because she failed to properly allege (1) constructive discharge from the Manager Trainee Program and (2) the failure of CSX to promote Plaintiff to Substitute Yardmaster.

While Plaintiff argues that constructive discharge provides the basis of her retaliation claim and that her allegations satisfy such a claim; her allegations do not present a plausible claim of constructive discharge. In the First Amended Complaint, Plaintiff alleges that she was promoted to Substitute Yardmaster in March of 2008 in response to the allegations contained in the September 2007 lawsuit. (First Amended Complaint ¶¶ 14, 17). Likewise, CSX promoted her from Substitute Yardmaster to the Manager Trainee Program in January of 2009, also in response to the allegations contained in the pending lawsuit. (*Id.* ¶ 20). After making an effort to promote Plaintiff twice in response to her September 2007 lawsuit, drawing the inference that Plaintiff was then constructively discharged from the Manager Trainee Program in retaliation for filing that same lawsuit is not reasonable. Similarly, the court cannot draw a reasonable inference that CSX's decision not to return Plaintiff to her position as Substitute Yardmaster or to promote her to Substitute Yardmaster once positions became available was in retaliation for the September 2007 lawsuit. Furthermore, Plaintiff's First Amended Complaint notes that CSX's stated reason for rescinding Plaintiff's application for Substitute Yardmaster and releasing her from yardmaster training was operational

11

need and the unavailability of a Substitute Yardmaster's position. (*Id.* ¶ 27). Given a logical explanation for CSX's actions, the court cannot reasonably conclude that those actions were retaliatory.

Additionally, based on her allegations, Plaintiff's working conditions did not become so intolerable or unbearable as to transform her voluntary resignation from the Manager Trainee Program into a constructive discharge.[2] To prevail on a claim of constructive discharge, a plaintiff must show that, from the standpoint of a reasonable employee, her work environment had become intolerable. *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) (citing *Pa. State Police*, 542 U.S. at 141). Working conditions do not become intolerable or unbearable merely because a "prospect of discharge lurks in the background." *Id.* (quoting *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 333 (7th Cir. 2004)). Other than the allegations that she received an extra assignment and that her instructors criticized her performance in the program during one telephone conference, Plaintiff only offers conclusory allegations that she endured consistent and systematic belittlement, undue criticism, false accusations, and harassment. (First Amended Complaint ¶¶ 22-24). Plaintiff's contention that any attempt at redress would have been useless in light of Plaintiff's previously filed EEOC complaints is pure speculation. Moreover, the instructors did not act in a manner so as to reasonably communicate to Plaintiff that she was going to be terminated from the Manager Trainee

---

[2]The court notes that, unlike the cases cited by each party, Plaintiff did not resign from CSX; rather, she merely resigned from the Manager Trainee Program. However, the court will address the arguments as raised by the parties, as neither party raised this issue.

Program. While the instructors were critical of her performance and actions during the May 28, 2009, telephone conference, the allegations contain no mention of even a possibility of her dismissal from the Manager Trainee Program. Without more, the court cannot infer that Plaintiff's work conditions had become intolerable or unbearable; therefore, her constructive discharge claim cannot survive.

### b. Indiana Retaliation Claims

Plaintiff also contends that she successfully pled that in June of 2010 CSX failed to promote her to Substitute Yardmaster in Evansville in retaliation for her 2007 EEOC complaint and lawsuit as well as an EEOC complaint she filed in October of 2009 addressing her Alabama claims.

First, The court again finds it implausible that CSX's failure to promote Plaintiff to Substitute Yardmaster in Evansville in 2010 was in retaliation for a lawsuit filed three years earlier, especially in light of the accommodations CSX provided to Plaintiff in response to the lawsuit. *Banks v. Thomas*, 2011 WL 6151637, at *2 (S.D.Ill. Dec. 12, 2011) (finding as facially implausible the notion that the plaintiff's transfer was taken in retaliation for an event that occurred four years earlier). Second, Plaintiff's more recent EEOC complaint was filed in October 2009, approximately eight months prior to the alleged retaliation. Several circuits, including the Seventh Circuit as well as district courts within the Seventh Circuit, have concluded that, without more, the passing of three to four months between an employee's engagement in a protected activity and subsequent adverse employment action is insufficient to establish a causal connection for the

purposes of a retaliation claim. *Accord DeFranco v. Wolfe*, 387 Fed.Appx. 147, 155 (3rd Cir. 2010) (finding no retaliation where the temporal gap between the protected activity and alleged retaliation was approximately two months); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (a three-month period between a request for overtime pay and termination was insufficient to establish a causal connection for retaliation claim); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (concluding that the temporal proximity of the filing of a retaliation claim and receipt of a disciplinary letter four months later did not sufficiently raise the inference that the filing was the reason for the adverse action); *Antonson v. United Armored Servs., Inc.*, 2002 WL 221605, at *3 (N.D.Ill. Feb. 12, 2002) (no retaliation where four months passed between the protected expression and the failure to promote and no additional proof establishing a causal nexus was provided). Here, eight months passed between the filing of Plaintiff's most recent EEOC retaliation claim and the failure to promote Plaintiff to Substitute Yardmaster. Because Plaintiff presents no more than the mere allegation that she engaged in protected activity and suffered adverse employment actions months and even years later, Plaintiff has failed to state a plausible claim for retaliation; therefore, her retaliation claims must be dismissed.

### B.     Attorneys' Fees

Finally, CSX believes it should be awarded reasonable attorneys' fees from the time this action was filed on May 16, 2011, until the First Amended Complaint was filed on October 13, 2011, because Plaintiff should have filed the Alabama and Indiana cases

in one forum from the outset of this litigation or at least agreed to have combined the two lawsuits sooner rather than later. In contrast, Plaintiff argues that although the two lawsuits shared common background information, each suit alleged separate and distinct claims. Furthermore, Plaintiff suggests that she mistakenly believed that a lawsuit based on an EEOC charge in a particular case must be filed in a district court in that same state. Under Section 1927 of the United States Code, the court may require a lawyer who unreasonably and vexatiously multiplies proceedings to satisfy attorneys' fees reasonably incurred due to such conduct. 28 U.S.C. § 1927. The court finds that Plaintiff's decision to file two lawsuits was not unreasonable, despite the existence of common background facts, given that she received a right to sue letter from the EEOC in two states for separate claims. Also, Plaintiff's desire to obtain a waiver from CSX regarding venue or statute of limitations defenses, in the event that Plaintiff dismissed the Alabama lawsuit and refiled in Indiana, was not unreasonable. While the court believes that Plaintiff should have dismissed the Alabama lawsuit in a timely manner once she filed the First Amended Complaint, the court does not believe Plaintiff's actions up to that point were unreasonable or vexatious. For these reasons, the court denies CSX's request for attorneys' fees from the beginning of this action until the filing of Plaintiff's First Amended Complaint.

     Because the court is denying CSX's request for attorneys' fees and is granting CSX's Motion to Dismiss based solely on the sufficiency of the allegations in Plaintiff's First Amended Complaint, oral argument on this motion is unnecessary. Accordingly,

Plaintiff's Request for Oral Argument is denied.

## IV. Conclusion

For the reasons set forth above, CSX's Motion to Dismiss First Amended Complaint (Docket # 26) or, In Alternative, Stay Case is **GRANTED**, with respect to the Motion to Dismiss, **DENIED as MOOT**, with respect to the Motion in Alternative to Stay Case, and **DENIED**, with respect to CSX's request for attorneys' fees. Plaintiff's First Amended Complaint is dismissed without prejudice. Plaintiff shall have twenty-one (21) days from the date of this order to file a second amended complaint. If no second amended complaint is filed within the requisite time period, then the case shall be dismissed with prejudice.

**SO ORDERED** this 10th day of May 2012.

RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic copies to:

Bixler W. Howland
ATTORNEYS AT LAW
bixler@loulaw.com

Michael Scott McIntyre
BAKER & HOSTETLER LLP
smcintyre@bakerlaw.com

Copy to:

Kerry R. McDonald
1005 Montgomery Hwy
Birmingham, AL 35216