UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| STEPHANIE SUE CARLSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:11-cv-66-RLY-WGH |
| | ) | |
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT**

In her Second Amended Complaint, Plaintiff, Stephanie Sue Carlson, alleges that

Defendant, CSX Transportation, Inc., engaged in sex discrimination against her.  (Second

Amended Complaint ¶¶ 61-65, 67-68).  Carlson claims CSX retaliated against her for her

prior complaint to the Equal Employment Opportunity Commission ("EEOC") and first

lawsuit against CSX ("2007 lawsuit").  (*Id*. ¶¶ 70-74, 76-77).  She further alleges CSX

breached the agreement governing the resolution of the 2007 lawsuit.  (*Id*. ¶¶ 80, 82).

CSX moves to dismiss Carlson's Second Complaint for failure to state a claim under

Federal Rule of Civil Procedure 12(b)(6) and for lack of subject matter jurisdiction under

Federal Rule of Civil Procedure 12(b)(1).  For reasons set forth below, CSX's motion is

**GRANTED**.

I.      **Background**

CSX hired Carlson in March 2002 (Second Amended Complaint ¶ 12), and she

has been employed by CSX continually since then.  At all times relevant to the action, her

work performance met or exceeded CSX's expectations.  (*Id*. ¶ 13).  Carlson worked as a clerk from March 2002 until March 2008.  (*Id*. ¶ 16).  That month, while the 2007 lawsuit was pending, Carlson was promoted to Substitute Yardmaster in Birmingham, Alabama.  (*Id*. ¶¶ 14, 17).  Carlson remained in this position until January 2009, when she was awarded a position in CSX's Manager Trainee Program.  (*Id*. ¶¶ 18, 20).  The 2007 lawsuit was settled on May 1, 2009, with a release executed in September 2009.  (*Id*. ¶ 15).

### A.      Manager Trainee Program

Carlson participated in the classroom training portion of the manager trainee program from January 12, 2009, until March 27, 2009, during which time she believes she received among the highest scores in the class.  (*Id*. ¶ 21).  During the week of March 23-27, 2009, Carlson attended classes in Jacksonville, Florida.  After a class session that week, the instructors, Tom Cook and Jaymes King, told Carlson she would have to fulfill an extra assignment no one else in the class was required to do.  (*Id*. ¶ 22).  For the remainder of the training period, she was subjected to "belittlement, unfair criticism, harassment and false accusations" by Cook and King.  (*Id*.).  This treatment continued after the program moved to field instruction and intensified after the resolution of the 2007 lawsuit.  (*Id*. ¶ 23).  Carlson claims that almost every action she took after that date "was unwarrantedly belittled, criticized and deemed unacceptable."  (*Id*. ¶ 24).  During a May 28, 2009, telephone conference, Cook and King falsely stated that Carlson:  (a) was the worst trainee in the class; (b) had not completed a safety meeting project; (c) was behind in another project; (d) was not completing her checklist; (e) should not have taken

2

vacation days, despite a supervisor approving the time off; and (f) was "too union." (*Id*. ¶ 24(a-f)). Carlson resigned from the management trainee program under duress that day as a result of CSX's actions. (*Id*. ¶ 25).

### B. Birmingham, Alabama

On June 2, 2009, Carlson met with CSX Terminal Superintendent Danny Spencer, who told her that CSX headquarters in Jacksonville had released her from yardmaster training and rescinded her application to be reinstated as a Substitute Yardmaster. (*Id*. ¶¶ 26-27). Carlson's application was rescinded due to alleged operational need and unavailability of a position, despite the Birmingham yard requiring four Substitute Yardmasters and some of the positions being vacant. (*Id*. ¶¶ 27-28). CSX denied her request for reinstatement, as she had not completed 60 starts as a Substitute Yardmaster and thus lacked seniority to return to the position. (*Id*. ¶ 30). However, a similarly situated male, Daniel Gainey, had previously been allowed to return to the Substitute Yardmaster position despite not completing 60 starts. (*Id*.).

### C. Evansville, Indiana

Carlson, unable to return as a Substitute Yardmaster in Birmingham, exercised her clerk's seniority and took a clerk position in Evansville, Indiana. (*Id*. ¶ 31). On August 26, 2009, CSX posted openings for Substitute Trainmaster positions in Birmingham. (*Id*. ¶ 32). Carlson e-mailed Spencer, asking for his help in obtaining a position. (*Id*.). Two days later, Spencer replied, stating there was no available position, and Carlson discovered the postings had been removed. (*Id*. ¶ 33). In late September 2009, Carlson timely submitted an application for another vacant Substitute Yardmaster position. (*Id*. ¶

34).  She was informed on October 7, 2009, that she was not selected for the position.

(*Id.* ¶ 36).  She was told she was ineligible because she was working outside the

Birmingham district, despite a similarly situated male, Michael Greathouse, previously

being hired as Substitute Yardmaster outside of his district.  (*Id.* ¶ 38).

On June 1, 2010, CSX posted openings for Substitute Yardmaster positions in

Evansville.  (*Id.* ¶ 46).  Carlson applied for one of the positions and passed the

prerequisite test, yet she was eliminated from consideration before the interview process

had begun.  (*Id.* ¶¶ 47-48, 50).  Carlson claims that the candidates that were interviewed

and selected were not as qualified as her.  (*Id.* ¶ 52).

### D.   Procedural History

Carlson filed a complaint with the EEOC in Alabama, on October 7, 2009,

alleging that her forced resignation from the management trainee program and not being

allowed to return to her position as a Substitute Yardmaster constituted age and sex

discrimination and retaliation for engaging in a protected activity.  (*Id.* ¶ 44).  She

received her Dismissal and Notice of Rights from the EEOC on November 20, 2010, and

filed suit in the Northern District of Alabama.  (*Id.* ¶ 45).  Carlson also filed a complaint

with the EEOC in Indiana on September 27, 2010, alleging sex discrimination and

retaliation.  (*Id.* ¶ 58).  The EEOC issued a right to sue letter on February 16, 2011, and

Carlson filed the present action on May 16, 2011.  (*Id.* ¶ 59).

After CSX moved to dismiss the original Indiana Complaint in its entirety,

Carlson obtained leave to file her First Amended Complaint, which consolidated the

Alabama and Indiana actions and removed any allegations of age discrimination.

4

(Docket # 21).  Carlson filed her First Amended Complaint on October 13, 2011 (Docket # 22), and CSX moved to dismiss the complaint for failure to state a claim upon which relief can be granted or, in the alternative, to stay the case.  (Docket # 26).  On May 10, 2012, the court dismissed Carlson's complaint without prejudice.   (Docket # 39, Order on Defendant's Motion to Dismiss First Amended Complaint or, in Alternative, Stay Case and Plaintiff's Request for Oral Argument ("Dismissal Order")).

On May 31, 2012, Carlson filed her Second Amended Complaint.  In Count I, Carlson alleges that the "belittlement, unfair criticism, false accusations and harassment" she suffered during her participation in the management trainee program constituted sex discrimination and created an environment that resulted in her constructive discharge from the program.  (Second Amended Complaint ¶ 61).  She also claims CSX's refusal to allow her to return to the Substitute Yardmaster position in Birmingham or consider her for vacant Substitute Yardmaster positions, while giving differential treatment to similarly situated males, was sex-based.  (*Id*. ¶¶ 62-64).  In Count II, Carlson alleges that CSX's refusal to interview and promote her to Substitute Yardmaster, while giving preferential treatment to similarly situated males, was also based on her sex.  (*Id*. ¶ 67).  In Counts III and IV, Carlson alleges CSX undertook the above-mentioned actions in retaliation for her filing complaints with the EEOC and her 2007 lawsuit, both protected activities.  (*Id*. ¶¶ 70-73, 76).  In each of Counts I-IV, Carlson alleges that CSX's actions violated Title VII of the Civil Rights Act of 1964 ("Title VII").  (*Id*. ¶¶ 65, 68, 74, 77).  In Count V, Carlson claims for the first time that CSX breached the settlement governing the resolution of Carlson's 2007 lawsuit.  (*Id*. ¶¶ 80, 82).

CSX now moves to dismiss the Second Amended Complaint on the grounds that Carlson has again failed to state a claim under Rule 12(b)(6).  (Docket # 41).  CSX also alleges that to the extent evaluating Carlson's claims requires the court to interpret provisions of the governing Collective Bargaining Agreement ("CBA"), those are "minor disputes" that must be resolved by arbitration pursuant to the Railway Labor Act ("RLA").  45 U.S.C. 151 *et seq*.  Therefore, CSX claims, the court lacks subject matter jurisdiction to interpret those provisions.  (citing 45 U.S.C. §§ 151(a)(5); 153(i)).  CSX further moves that Carlson's complaint be dismissed with prejudice.  CSX notes that in addition to this being her third complaint filed in this court, she filed three previous lawsuits for Counts I and III in the Northern District of Alabama.  (Defendant's Exs. A-1, A-2, and A-3).[1]

## II.    Motion to Dismiss Standard

### A.    Failure to State a Claim

Rule 12(b)(6) authorizes the dismissal of claims for "failure to state a claim upon which relief may be granted.  FED. R. CIV. P. 12(b)(6).  To comply with the pleading requirements in Federal Rule of Civil Procedure 8(a)(2), a complaint must "give the defendant fair notice of what the . . . claim is and the ground on which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).  A

---

[1] CSX's Exhibits A-1, A-2, and A-3, copies of Carlson's three Alabama complaints, fall within the "documents contained within the public record" exception, and the court may take judicial notice of them without converting Defendants' motion into one for summary judgment. *Menominee Indian Tribe of Wis. v. Thompson,* 161 F.3d 449, 456 (7th Cir. 1998).

complaint need not make detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, but it must contain more than "an unadorned, the defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 137 L. Ed. 2d 868 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Additionally, to survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," not when the plaintiff only raises a "sheer possibility that the defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). The court must treat the factual allegations in the complaint as true, construe the allegations liberally, and draw all reasonable inferences in the plaintiff's favor. *See Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005) (internal quotation omitted). Accordingly, the facts outlined above are accepted as Plaintiff alleges them.

### B.   Lack of Subject Matter Jurisdiction

Subject matter jurisdiction must be examined by a court at every stage of litigation. *United Phosphorous, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). If a court lacks subject matter jurisdiction, it must dismiss the complaint. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006). If the movant asserts that despite the complaint's facial sufficiency, subject matter

7

jurisdiction does not exist, "[t]he court may look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Alicea-Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698, 702 (7th Cir. 2003). The burden of proof is normally on the party asserting jurisdiction to prove subject matter jurisdiction exists. *United Phosphorous, Ltd.*, 322 F.3d at 946. However, since CSX claims pre-emption under the RLA, it must show "minor disputes" exist, which makes arbitral jurisdiction exclusive. *Consolidated Rail Corp. v. Ry. Labor Execs. Ass'n*, 491 U.S. 299, 306-07, 109 S. Ct. 2477, 105 L. Ed. 2d 250 (1989).

## III.   Discussion

### A.   Overview

Normally, a court presented with motions to dismiss under Rule 12(b)(1) and 12(b)(6) "must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Kimble v. Postmaster Gen.*, 2012 WL 1833682, *1 (S.D. Ind. May 18, 2012) (quoting *Magee v. Nassau Cnty. Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)). However, the court extensively evaluated Carlson's Title VII claims and dismissed her First Amended Complaint without the RLA pre-empting her claims. Since the underlying nature of those claims are the same, the court can only properly determine whether it still has jurisdiction by determining whether she cured previous defects in Counts I-IV, the Title VII claims. The court would need to defer ruling on the Rule 12(b)(6) motion to dismiss only if Carlson plead facts that would create minor disputes under the RLA. The

8

court must therefore analyze CSX's Rule 12(b)(6) motion before determining whether it has subject matter jurisdiction over any surviving part of her complaint.  It is undisputed that Count V—breach of contract—is outside the scope of the CBA, and thus the court need only determine whether Carlson has stated a plausible claim for relief.

### B.      Title VII Claims

Title VII prohibits an employer:  (1) from refusing to hire, or discriminating against, an individual on the basis of sex (42 U.S.C. § 2000e-2(a)); and (2) from taking an adverse employment action against an employee simply because that employee filed an unfair employment charge.  42 U.S.C. § 2000e-3(a).  *See Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).

### 1.      Sex Discrimination

### a.      First Amended Complaint

The court dismissed the sex discrimination claims in Carlson's First Amended Complaint on the following grounds:  (1) Carlson failed to "allege that a male employee was treated more favorably than she was treated" or provide any direct or circumstantial evidence suggesting sex-based discrimination by CSX against Carlson (Dismissal Order at 10); (2) the statements made by instructors from the training program (Second Amended Complaint ¶ 24(a-f)) are gender-neutral (Dismissal Order at 10); and (3) she did not know whether the Substitute Yardmaster positions were filled by females or males.  (*Id.*).

**b.     Second Amended Complaint – Alabama Allegations**

In her Second Amended Complaint, Carlson added the allegation that Gainey, a similarly situated male, was allowed to return to being a Substitute Yardmaster after being removed by CSX as a manager without having the requisite 60 starts as a Substitute Yardmaster.  (Second Amended Complaint ¶ 30).  However, the complaint fails to rectify the latter two reasons for the case's dismissal.  Carlson does not allege that the criticisms by Cook and King (*Id.* ¶ 24(a-f)) were sex-based, making her claim of constructive discharge due to their actions (*id.* ¶ 61) untenable.  More importantly, she still does not allege that a male, or anyone, was hired for the Substitute Yardmaster positions.  In *Kulumani v. Blue Cross Blue Shield Ass'n*, the Seventh Circuit held that a plaintiff cannot sustain a Title VII discrimination claim if the positions for which a plaintiff applied were not filled.  224 F.3d 681, 683 (7th Cir. 2000).  With this binding precedent before the court, no interpretation or analysis of the CBA is necessary; Carlson has no actionable claim for failure to promote.  Therefore, to the extent her claim centers on CSX's failure to hire her for the new Substitute Yardmaster positions posted in August and September 2009 (Second Amended Complaint ¶¶ 63-64)[2], it must be DISMISSED for failure to state a claim.

However, the *Kulumani* Court upheld the dismissal of plaintiff's failure to rehire claim solely because he had failed to file an EEOC charge in the matter.  *Kulumani*, 224 F.3d at 685.  The Court did not rule that a claim of failure to rehire—or in Carlson's case,

_____

[2] In her factual allegations, Carlson refers to the position as "substitute trainmaster."  (Second Amended Complaint ¶ 32).  In the light most favorable to Carlson, the court assumes these positions are identical or functionally equivalent.

failure to reinstate (Second Amended Complaint ¶ 62)—was precluded by a plaintiff failing to prove the positions were filled.  Given the alleged favorable treatment given by CSX to Gainey vis-à-vis Carlson (*id*. ¶ 30), CSX's explanation that Carlson did not have the 60 starts as a Substitute Yardmaster may be an unlawful pretext—"deceit used to cover one's tracks."  *Kulumani*, 224 F.3d at 683 (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).  In the light most favorable to Carlson, the court can reasonably infer that CSX may have discriminated against her on the basis of sex by failing to reinstate her as a Substitute Yardmaster.  At this stage of the court's analysis, CSX's motion to dismiss for failure to state a claim is hereby DENIED for failure to reinstate.

### c.      Indiana Discrimination Claim

Carlson does not allege unfavorable treatment based on sex in Count II of her complaint, nor does she provide any direct or circumstantial evidence to permit the court to make such an inference.  Carlson states that the people hired for the Substitute Yardmaster positions in Evansville "were not as qualified as [Carlson]."  (Second Amended Complaint ¶ 52).  However, she does not allege that males were hired for all or any of the positions; failing to allege sex-based disparate treatment means she has not made a *prima facie* sex discrimination claim.  *See, e.g., Morrow v. Wal-Mart Stores, Inc.*, 152 F.3d 559, 561 (7th Cir. 1999); *Geier v. Medtronic, Inc.*, 99 F.3d 238, 241 (7th Cir. 1996).  Similar to the failure to promote claim in Count I, binding precedent makes CBA interpretation unnecessary.  Since she alleges no other sex-based adverse treatment, Count II must be DISMISSED.

11

### 2.     Retaliation Claims

The court previously dismissed Carlson's Alabama retaliation count for failing to properly allege that she was constructively discharged from the Manager Trainee Program or that she was not returned to her Substitute Yardmaster position in retaliation for filing an EEOC complaint and the September 2007 lawsuit.  (Dismissal Order at 10-13).  The court dismissed Carlson's Indiana claim because the alleged retaliatory act of failing to promote her to Substitute Yardmaster in Evansville happened at least eight months after Carlson's complaint with the EEOC in Alabama.  (*Id*. at 13-14).  The court noted that the Seventh Circuit and several other Circuits had failed to find retaliation when as little as two months had passed between the protected activity and the alleged retaliation.  *Id*. (citing *Accord DeFranco v. Wolfe*, 387 Fed. App'x 147, 155 (3rd Cir. 2010); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997); *Hughs v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992); *Antonson v. United Armored Svcs., Inc.*, 2002 WL 221605, at *3 (N.D. Ill. Feb. 12, 2002)).

### a.     Alabama Retaliation Claim

Carlson has pleaded no new facts that would indicate a working environment was unbearable from the standpoint of a reasonable employee, the requirement for a plausible claim of constructive discharge.  *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010).  The court is thus left only with her conclusory allegations of belittlement, undue criticism, false accusations, and harassment.  (Second Amended Complaint ¶¶ 22-25).  As noted in the Dismissal Order, these allegations fail to offer any evidence of intolerable working conditions.  (Dismissal Order at 12).  The only specific

12

incident noted in the May 2-28, 2009, timeframe was the May 24, 2009, telephone conference with King and Cook.  (Second Amended Complaint ¶ 24(a-f)).  Carlson also failed to address the court's other concerns:  (1) that she failed to exhaust internal company remedies or designate any evidence that pursuing such remedies would have been futile; and (2) the instructors never communicated that she was going to be terminated from the management trainee program.  (Dismissal Order at 12-13).  The parties do not cite any CBA provision that would govern whether Carlson was constructively discharged, so the RLA's arbitration requirement does not deprive the court of subject matter jurisdiction.  Finally, Carlson did not cite any case law supporting her position that she could sustain a constructive discharge claim after she merely resigned from a program or position within CSX but remained a CSX employee.  CSX's motion to dismiss as it pertains to her constructive discharge claim is hereby GRANTED.

This leaves Carlson's claim that CSX's failure to reinstate her or promote her to Substitute Yardmaster was in retaliation for her first Alabama EEOC complaint and 2007 lawsuit.  (Second Amended Complaint ¶¶ 71-73).  Carlson offers no new facts that enable the court to resolve the implausibility of her claim that CSX promoted her twice during the 2007 lawsuit's pendency (*id*. ¶¶ 17, 20) only to retaliate against her after the lawsuit settled.  Carlson did allege that in two instances similarly situated employees were not subject to the same seniority requirements or geographic constraints that were given as reasons for why she could not be reinstated.  (*Id*. ¶¶ 30, 38).  While the failure to reinstate her to the Substitute Yardmaster happened within one month of the 2007 lawsuit's

resolution (*id*. ¶ 30), the failure to promote did not occur until five months after the 2007 lawsuit was resolved.  (*Id*. ¶ 38).

There is Seventh Circuit precedent that a four month gap between the protected conduct and retaliatory act, with no other evidence suggesting the protected conduct provoked CSX's retaliation, did not constitute an actionable retaliation claim.  *Hughs*, 967 F.2d at 1174-75.  Therefore, no CBA interpretation is necessary for the court to conclude that Carlson's failure to promote claim cannot be sustained.  However, the one month time gap between the 2007 lawsuit's resolution and the failure to reinstate her to the Substitute Yardmaster position permits the inference that the disparate treatment may have been in response to the resolution of the lawsuit.  CSX's motion to dismiss Count III for failure to state a claim is GRANTED for the alleged failure to subsequently promote her to Substitute Yardmaster; and, at this stage of the court's analysis, DENIED as it pertains to the failure to return her to the position upon her resignation from the program.

### b.     Indiana Retaliation Claim

Carlson made only one addition to the Second Amended Complaint, alleging that:

> As a result of the defendant's actions in refusing to interview the Plaintiff
> and assign/award the plaintiff one of the posted substitute yardmaster
> positions in Evansville, Indiana, as set out in paragraphs 46, 47, 48, 49, 50,
> 51, and 52, defendant retaliated against the plaintiff for her prior EEOC
> complaints and lawsuit.

(Second Amended Complaint ¶ 76).  Carlson has merely made more specific her conclusory allegation in the First Amended Complaint.  She did not address the court's concern about the long period between the protected activity and alleged retaliation—eight months from the most recent EEOC complaint, and almost three years since the

14

filing of the 2007 lawsuit.  She also did not present more than "the mere allegation that she engaged in protected activity and suffered adverse employment actions."  (Dismissal Order at 14).  Given the Court's decision in *Hughs*, no CBA interpretation is required to dispose of Count IV.  Carlson's Indiana retaliation claim must therefore be DISMISSED.

### 3.   Pre-emption of the Remaining Title VII Claims

CSX argues that any otherwise plausible claims must be dismissed because they would require the court to interpret CBA provisions, and the RLA's arbitration mechanism is the exclusive means of interpretation.  45 U.S.C. §184.  The RLA pre-empts an otherwise valid federal claim and requires that the arbitral mechanism be used when the disputes arise "out of grievances or out of the interpretation and application of agreements concerning rates of pay, rules, or working conditions."  45 U.S.C. § 153(i).  These are also known as "minor disputes."  *See, e.g., Rader v. United Transp. Union*, 718 F.2d 1012, 1013 (11th Cir. 1983).  CSX argues that even if Carlson's claims are plausible under Title VII, they must be dismissed because they would require the court to interpret CBA provisions on seniority and the vesting of seniority within certain districts.  *Schiltz v. Burlington Northern R.R.*, 115 F.3d 1407, 1414 (8th Cir. 1997).

Carlson rejoins that the CBA provisions "are simply facts to be derived from the mere reading of the agreement."  (Plaintiff's Response at 8).  Therefore, interpreting the CBA is not required to expose the non-discriminatory reasons proffered by CSX as mere pretext for discriminating against Carlson based upon her sex and for retaliating against her for the previous protected conduct.  Carlson cites *Brown v. Ill. Cent. R.R. Co.* for the proposition that a valid claim will be precluded "only if it can be dispositively resolved

through an interpretation of a CBA." 254 F.3d 654, 668 (7th Cir. 2001). This happens "only when a provision of the [CBA] is the subject of the dispute or the dispute is substantially dependent upon an analysis of the terms of a [CBA]." *Id*. (internal quotation omitted). A valid claim will not be precluded "merely because certain provisions of the CBA must be examined and weighed as a relevant but non-dispositive factor in deciding a claim or a defense." *Id*.

*Brown* is the leading case on the RLA's arbitration provision pre-empting otherwise valid federal claims. *Crayton v. Long Island R.R.*, 2006 WL 3833114, at *4 (E.D.N.Y. Dec. 29, 2006). In *Brown*, the plaintiff brought a claim under the Americans with Disabilities Act of 1990. 254 F.3d at 655. The Court found the district court lacked subject matter jurisdiction under the RLA because, if Brown had been granted the accommodation he sought, it was possible that this would violate the seniority provisions of the CBA, and this CBA provision was potentially dispositive of Brown's federal claim. *Id*. at 660-61. The court also noted that, in the absence of a statute's language or legislative history suggesting that the RLA's arbitration requirement should not apply, the RLA's preemption requirement would apply even to a claim brought under a different statute. *Id*. at 662-63.

Similarly in Count I, the CBA's seniority provisions (Defendant's Ex. C at 34-35) must be interpreted to determine whether Carlson lacked Gainey's seniority when she asked to be reinstated to her position as a Substitute Yardmaster. The interpretation would be wholly dispositive of whether CSX had a valid, non-discriminatory reason for the allegedly disparate treatment of Carlson and Gainey. (Second Amended Complaint ¶

16

30).  Following *Brown*'s dictates, the court lacks subject matter jurisdiction to hear Count I, and thus CSX's motion to dismiss this count is GRANTED.

In regard to Count III, the Alabama retaliation claim, the court noted in its Dismissal Order that "[g]iven a logical explanation [operational need and unavailability of a Substitute Yardmaster position] for CSX's actions, the court cannot reasonably conclude that those actions were retaliatory."  (Dismissal Order at 12).  Carlson claims that these were merely pretexts for failing to return or promote her to the Substitute Yardmaster position for which she was otherwise qualified.  Determining whether she was actually qualified for an available position in Birmingham would require the court to interpret the seniority requirements, ascertain whether she had missed work without legitimate reason, and decide whether her previous Substitute Yardmaster work was protected for seniority purposes.  Doing so would require the court to interpret section two of the governing CBA.  (Defendant's Ex. C at 34-35).  Since the CBA must be interpreted pursuant to the arbitral mechanism provided for by the RLA, Carlson's remaining retaliation claim must also be DISMISSED.

### C.    Breach of Contract

The barebones nature of Carlson's breach of contract claim—there was a contract covering the resolution of her first EEOC complaint and 2007 lawsuit, and CSX breached it (Second Amended Complaint ¶¶ 80, 82)—is precisely the type of claim that cannot survive a Rule 12(b)(6) motion to dismiss.  In her response, Carlson stated that she intended to submit a copy of relevant portions of the agreement for the court's *in camera* inspection.  No submission was made in connection to this motion, so the court is left

17

only to analyze the allegations in Carlson's complaint.  Carlson's allegations do not permit the court to reasonably infer how CSX may have breached the contract.  The court therefore GRANTS CSX's motion to dismiss.

### D.    Dismissal with Prejudice

CSX has asked that Carlson's claims be dismissed with prejudice.  The court agrees with CSX for Carlson's claims dismissed under Rule 12(b)(6).  Carlson has been given several opportunities to clear the modest procedural hurdles imposed by Rule 8(a)(2), and for the most part she has failed to do so.  The court does not believe that granting leave to amend the complaint would rectify the Second Amended Complaint's defects.  Allegations of failure to reinstate in Counts I and III, which were sufficient to state a claim at this stage, are pre-empted by the RLA's arbitral mechanism.  If Carlson received a favorable CBA interpretation at arbitration, she would have plausible claims against CSX independent of the RLA.  Therefore, she should be permitted to re-file portions of Counts I and III, if necessary, but only after exhausting arbitral and any other administrative remedies under the RLA.  *Rader*, 718 F.2d at 1014.  Accordingly, Counts I and III are dismissed without prejudice as to CSX's failure to reinstate.

## IV.   Conclusion

For the foregoing reasons, CSX's Motion to Dismiss Carlson's Second Amended Complaint (Docket #41) is **GRANTED**.  Counts II, IV, and V are dismissed with prejudice in their entirety.  Counts I and III are dismissed with prejudice as they pertain to constructive discharge and failure to subsequently promote to Substitute Yardmaster

18

and without prejudice as they pertain to CSX's failure to reinstate Carlson to her previous Substitute Yardmaster position.[3]

**SO ORDERED** this 5th day of March 2013.

_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.

---

[3] Defendant's Motion for Summary Judgment (Docket # 48) and to Strike Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Docket #72) are hereby **denied as moot**.